**James GAMES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–9908–CR–447.

Supreme Court of Indiana.

March 20, 2001.

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant James Games spent a fair amount of time on Indiana's death row but eventually won a new sentencing hearing. In lieu of further litigation, Games and the State crafted a plea bargain under which Games agreed to be sentenced for murder, robbery, and conspiracy to commit robbery. The Marion County Prosecutor dropped his request for the death penalty. After a sentencing hearing, the trial court imposed sentences lasting 110 years.

Games says double jeopardy prohibits his sentence. We hold he gave up such claims when he pled guilty.

**Facts and Procedural History**

On July 15, 1983, eighteen-year-old Games and fourteen-year-old Earl Tillberry devised a robbery scheme. Games induced Thomas Ferree to take Tillberry and himself to Ferree's home by promising a "surprise" (i.e. sexual favors). (R. at 438–39.) After Tillberry stabbed Ferree pursuant to their plan, Games continued to stab and bludgeon him to death using an assortment of knives, a meat cleaver, and a fire poker. A jury found Games guilty of murder, robbery, conspiracy to commit battery, and conspiracy to commit robbery. The court sentenced Games to death plus forty years. This Court affirmed. *Games v. State,* 535 N.E.2d 530 (Ind.1989) ("*Games I*") *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158 (1989).

Games petitioned for post-conviction relief. The post-conviction court affirmed the convictions but granted re-sentencing. On appeal, we affirmed, except for ordering the conviction for conspiracy to commit

battery vacated on double jeopardy grounds. *Games v. State,* 684 N.E.2d 466 (Ind.1997) ("*Games II*"). As to the murder and robbery counts, we found no double jeopardy violation, analyzing the question under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Games II,* 684 N.E.2d at 477.

After remand for re-sentencing, Games negotiated a plea agreement:

> c.)In consideration for the State of Indiana foregoing its request for the death penalty, the defendant agrees that the full range of sentences provided by statute on each count of conviction is now available for consideration for possible sentencing purposes. Specifically the defendant may be sentenced up to eight (8) years on Counts I and IV (which merge into one sentence pursuant to the holding in [*Games II*]); the defendant may be sentenced from thirty (30) to sixty (60) years on Count II; and he may be sentenced from twenty (20) to fifty (50) years on Count III pursuant to the holding in [*Games II*], supra, which states that separate sentences on Counts II and III herein do not constitute double jeopardy.

(R. at 122.) In short, Games bargained for a sentence between sixty and 118 years in order to avoid the death penalty. The trial court eventually imposed the maximum number of years on each count finding that the aggravating factors outweighed the mitigating circumstances. It therefore ordered that the murder and robbery sentences be served consecutively, concurrent with the conspiracy sentence. Games now appeals his sentence.

**I. Waiver of Double Jeopardy**

Games argues that his sentencing for both murder and robbery violates double jeopardy under this Court's decision in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999), which applied a "same offense" analysis.[1] (Appellant's Br. at 10.) This argu-

1. Games entered into his plea agreement in February 1999. (R. at 121–25.) *Richardson*

ment is not available to him. Games waived his right to challenge his sentence on double jeopardy grounds when he entered his plea agreement.

■ In *Lutes v. State*, 272 Ind. 699, 704–05, 401 N.E.2d 671, 674 (1980), we held that a defendant with adequate counsel who enters a plea agreement to achieve an advantageous position must keep the bargain. Once the defendant bargains for a reduced charge, he cannot then challenge the sentence on double jeopardy grounds. *See Griffin v. State*, 540 N.E.2d 1187 (Ind. 1989). Games agreed to up to 118 years in prison in exchange for his life; clearly he bargained to his own benefit. As the Court of Appeals has observed, retaining a benefit while relieving oneself of the burden of the plea agreement "would operate as a fraud upon the court." *Spivey v. State*, 553 N.E:2d 508, 509 (Ind.Ct.App. 1990) (citation omitted).

■ Defendants who plead guilty to achieve favorable outcomes in the process of bargaining give up a plethora of substantive claims and procedural rights. Games has waived his claim of double jeopardy.

## II. The DOC Documents

■ Games contends the court wrongly permitted the prosecution to offer his Department of Correction disciplinary record as rebuttal evidence. (Appellant's Br. at 32–37.)

During Games' sentencing presentation on May 18, 1999, he called Marie Donnelly, the attorney for his post-conviction hearing. She portrayed Games as a model prisoner. (R. at 733–35.)

On June 11 while the sentence was still under advisement, the prosecution filed a motion to reopen presentation of sentencing evidence in order to tender Games' DOC record. This was allowed over Games' objection, though the trial court offered Games the opportunity for additional time to respond.

■ Games argues at some length that Donnelly's testimony did not "open the door" so as to warrant a further presentation of evidence by the State. (Appellant's Br. at 32–37.) A trial court has considerable latitude to fashion the order of things in a sentencing proceeding. Games raised the issue of his prison conduct, and the court had the discretion to afford the State a chance to provide further evidence about that topic.

■ Games concedes that his prison conduct record was relevant to the sentencing hearing,[2] (Appellant's Br. at 32), but says the court afforded it undue weight in light of the fact that the records were hearsay, (*Id.* at 41–44).

■ The records were brought in under the business records exception to the hearsay rule, Ind. Evidence R. 803(6),[3] and in any event a trial court may consider hear-

was decided in October 1999.

2. When determining a sentence, a judge may consider "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Cherry v. State*, 275 Ind. 14, 19, 414 N.E.2d 301, 305 (1981) (footnotes omitted) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). This conduct may be a basis for a more severe sentence. *Id.*

3. Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from infor-

mation transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Ind. Evidence R. 803(6).

**1136**

say in a sentencing proceeding. *Lasley v. State*, 510 N.E.2d 1340 (Ind.1987). The trial court gave Games the opportunity to contest the accuracy of these records, but he has not demonstrated any particular errors in them, either at trial or on appeal. Instead, Games argues generically that they may not be reliable. This is not enough.

### III. Weighing Aggravators and Mitigators

■ In sentencing Games, the trial court identified a number of relevant aggravating factors: history of violence, the gruesome use of a variety of implements on the victim, his use of deception to gain entrance to the victim's home, Games' juvenile record, and his prison misconduct (e.g. participation in a hostage situation on death row and stabbing an inmate). It also took account of the statement by the victim's family that the crime warranted the maximum sentence.

The trial court also found several mitigating circumstances: Games' deprived childhood, his untreated substance abuse, his remorse, and the disparity in sentencing between Games and his accomplice.

The trial judge's conclusion that the aggravating circumstances were weightier and warranted enhanced and consecutive sentences was an appropriate exercise of discretion. *See Sims v. State*, 585 N.E.2d 271, 272 (Ind.1992) (weighing of aggravating and mitigating circumstances lies within discretion of trial court).

### Conclusion

We affirm the sentence of 110 years.

SULLIVAN, DICKSON, BOEHM, and RUCKER, JJ., concur.