## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2017, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard Walker
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joetta S. Sells, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 2, 2017 <br><br> Court of Appeals Case No. <br> 48A05-1511-CR-1954 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Mark K. Dudley, Judge <br><br> Trial Court Cause No. <br> 48C06-1412-F3-2123 |

**Mathias, Judge.**

[1]     Joetta S. Sells ("Joetta") pleaded guilty in Madison Circuit Court to ten felonies arising from her years-long neglect and abuse of M., her husband's teenaged

granddaughter. Joetta was sentenced to twenty-four years' incarceration, fully executed. She now appeals, challenging her conviction as violative of the prohibition on double jeopardy and her sentence as inappropriate.

We affirm.

## Facts and Procedural Posture

M. is a teenage girl born in 1998 with a partial deletion of chromosome 5. This genetic abnormality has caused her to suffer serious but manageable mental and physical disabilities. As of October 12, 2015, in the care of her foster mother, M. has been "happy all the time," learning to take care of herself and to read and write. Tr. p. 138. However, for too many years, this was not so.

M. was born the granddaughter of Steve Sells ("Steve"). M.'s mother was Steve's daughter, and she abandoned M. to her grandfather's custody when M. was about two years old. Steve and Joetta married in 2008, when M. was about ten years old, and both Steve and Joetta were M.'s legal guardians from 2009.

Steve and Joetta lived together in a house in Anderson, Indiana. M. lived with them, as did Crystal Sells ("Crystal"), Joetta's adult daughter, and A., the preschool-age daughter of Amber Wise ("Wise"), for whom the Sellses also cared. In 2010, M. began rapidly losing weight. An Indianapolis doctor diagnosed M.'s genetic deficiency and prescribed a course of treatment and therapy. The last time the Indianapolis doctor saw M. was in early 2012.

[6] The next time M. saw any doctor was December 1, 2014. On that day, the Anderson fire department was dispatched to the Sells residence after a 911 emergency call from the house. Paramedics found M. completely unresponsive on a downstairs couch. Her face and lips were blue, her eyes were open, and she had been covered with a filthy blanket. Her heart was beating without producing a pulse. M. was rushed to the hospital and put under the care of a specialized child trauma team. She had a fractured skull and feces on her feet and under her fingernails. She was described as "severely malnourished," "wasted completely," having "no reserve," "completely depleted," "just skin and bones." Tr. p. 87. Although fifteen years old, M. weighed fifty-two pounds. The pictures taken of M. that day reveal an extremity of suffering not adequately conveyed in writing. It would be a full two and one-half months, the middle of February 2015, before M. displayed "really any response" to stimulus. Tr. p. 135.

[7] A detective of the Anderson police department spoke with Steve and Joetta at the hospital; Steve had told the responding paramedics at the house that he thought this would be a "child protective services case." Tr. p. 106. Officers later went to the Sells residence and searched the house with Steve's consent. Upstairs, officers found a room with a clasp lock on the outside. Inside the room was a tattered mattress, blankets, a space heater, a bowl of oatmeal, and a bucket. The floor and the blankets were stained with M.'s blood and feces.

[8] The evidence showed that M. had been kept locked in that room, an earlier chain lock exchanged for the clasp lock, when it was discovered that M. could

unlock the chain lock from the inside. M. was locked in the room day and night, being let out only, apparently irregularly, to eat and warm herself. A., then four years old, told officers she had seen M. sticking her fingers through the door, trying to free herself. M. was not allowed to use the bathroom, but had to use the bucket to relieve herself and was punished for doing so. Crystal had seen Steve drag M. down the stairs by her hair four or five times. Wise, A.'s mother, told officers the abuse of M. had begun in 2011 at the latest. Wise had lived with the Sellses for two months that year. At that time, M. was kept locked in a different room, downstairs. Wise told officers she had seen Joetta strike M. in the face with her belt buckle, and give her urine and feces to ingest as punishment.

[9] As a result of M.'s near death, Joetta was charged with eleven felonies and one misdemeanor: three Level 3 felony counts of neglect of a dependent resulting in serious bodily injury, lasting from July 2014, when Indiana's new felony classification system came into effect, to December 2014; one Level 3 felony count of criminal confinement resulting in serious bodily injury over the same period; one Class C felony count of criminal confinement of a person under fourteen, lasting from January 2011 to December 2012; one Class C felony count of neglect of a dependent, lasting from August 2011 to June 2014; three Class D felony counts of neglect of a dependent, one lasting from August 2011 to June 2014, another from January 2011 to June 2014, and the last from August 2011 to September 2011; one Class D felony count of criminal confinement, lasting from December 2012 to June 2014; one Class D felony

count of battery resulting in bodily injury in August 2011; and one Class A misdemeanor count of battery by bodily waste, between August 2011 and September 2011.

On September 19, 2015, Joetta pleaded guilty "open," without benefit of a plea agreement with the State, to nine of the felony charges. The remaining felony charge, Count X, the third Class D felony neglect of a dependent charge, and the misdemeanor charge, Count XII, were dismissed by the court on the State's motion on October 14, 2015.

At Joetta's sentencing hearing on October 12, 2015, the court heard extensive evidence and argument. In aggravation, the court weighed the nature and circumstances of the years-long abuse, the presence of A. in the house at the time, the position of trust Joetta had over M., Joetta's attempts to shift the blame to her husband, and the enormous harm suffered by M. In mitigation, the court weighed Joetta's guilty plea and complete lack of criminal history. The court sentenced Joetta to an aggregate term of twenty-four years' incarceration, fully executed.

This appeal timely followed.

# Discussion and Decision

### *Joetta Waived Her Double Jeopardy Claim by Pleading Guilty*

Joetta argues that her conviction violated the double jeopardy protections of our state constitution. Ind. Const. Art. I § 14 ("No person shall be put in jeopardy

twice for the same offense."). We cannot entertain this argument, however, because Joetta's guilty plea forecloses it.

[14] "Defendants waive a whole panoply of rights by voluntarily pleading guilty." *Mapp v. State*, 770 N.E.2d 332, 334-35 (Ind. 2002). "One consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal." *Tumulty v. State*, 666 N.E. 394, 395 (Ind. 1996). This includes double jeopardy challenges, *Games v. State*, 743 N.E.2d 1132, 1135 (Ind. 2001), without exception for even "'facially duplicative' charges." *Mapp*, 770 N.E.2d at 334.

[15] Before Joetta pleaded guilty, she watched a "rights advisement DVD." Tr. p. 69. The video explained to her, "If you were found guilty at trial you have the right [to] appeal your conviction to a higher [c]ourt. You have the right to be represented by a lawyer at all stages of a criminal proceeding, including the appeal." Tr. p. 70. After watching the DVD, Joetta was asked by the court whether she understood the rights summarized there. Tr. p. 74. She said she did. *Id.* The court asked further whether Joetta "underst[oo]d that by pleading guilty [she would] be giving up these rights . . . ." *Id.* Again, Joetta said she did. *Id.*

[16] By pleading guilty, Joetta presumably received or expected to receive some benefit.[1] We are now bound to hold her to the bargain. By failing even to

---

[1] At the least, the sentencing court gave Sells's guilty plea "modest weight" in mitigation. Appellant's App. p. 178.

acknowledge the waiver issue, *see* Appellant's Br. pp. 13-16, Joetta offers us no reason to consider a different result. Joetta waived double jeopardy protection when she pleaded guilty. *Games*, 743 N.E.2d at 1135.

### *Joetta's Twenty-Four Year Sentence Is Not Inappropriate in Light of the Nature of Her Offenses or of Her Character*

[17] Where a sentencing court exercised discretion in sentencing a defendant, even a guilty plea does not preclude review of that sentence. *Tumulty*, 666 N.E.2d at 396. Joetta pleaded guilty without benefit of a sentencing recommendation from the State. In accepting her plea, the sentencing court thus retained its full discretion. Joetta's sentence is therefore properly reviewable here.

[18] We may revise a lawfully imposed sentence "if, after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Joetta bears the burden of persuading us that she has been inappropriately sentenced. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Her burden is a heavy one. Due consideration of the trial court's decision requires us to give it "considerable deference," *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015), in view of the trial courts' "special expertise" in the fact-intensive sentencing decision. *Scott v. State*, 840 N.E.2d 376, 381 (Ind. Ct. App. 2006), *trans. denied*. Such deference ordinarily prevails "unless overcome by compelling evidence portraying [the offense and the offender] in a positive light." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] We examine the sentence in its totality as it is actually to be served. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The aggregate term of years, *id.*, the time suspended and executed, *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010), the placement called for in the sentence, *King*, 894 N.E.2d at 267, and any other penal consequences, *Davidson*, 926 N.E.2d at 1025, are examined in light of the defendant's culpability, the severity of the crime, the harm the done to others, and any other relevant facts of the individual case. *Cardwell*, 895 N.E.2d at 1224. We undertake such review guided by its primary purpose of "leaven[ing] the outliers," that is, promoting consistency and uniformity in sentencing by restraining extraordinarily harsh or lenient sentences. *Id.* at 1225.

[20] Joetta pleaded guilty to ten felonies: four Level 3 felonies, two Class C felonies, and four Class D felonies. The court sentenced Joetta to sixteen years' incarceration on each of the four Level 3 felonies, the statutory maximum, and merged them: three counts of neglect of a dependent resulting in serious bodily injury and one count of criminal confinement. Appellant's App. p. 178. The court further sentenced Joetta to eight years on each of the two Class C felonies, again the statutory maximum, and merged them: one count of criminal confinement and one count of neglect of a dependent. *Id.* at pp. 178-79. On three of the four Class D felonies, the court sentenced Joetta to three years each, again the statutory maximum, and merged them: two counts of neglect of a dependent and one count of criminal confinement. *Id.* at p. 179. Finally, the court sentenced Joetta to three years on the remaining Class D felony, again the statutory maximum, one count of battery resulting in bodily injury. *Id.*

[21] The two Class C felony sentences were ordered to run consecutively to the four Level 3 felony sentences, and the four Class D felony sentences were ordered to run concurrently to the two Class C felony sentences. *Id.* The eight-year sentence on the merged Class C felony sentences, consecutive to the sixteen-year sentence on the merged Level 3 felony sentences, thus produced an aggregate sentence of twenty-four years, to be fully executed. *Id.* This is six years fewer than Joetta would have received had the court ordered the Class D felony battery sentence and the remaining merged Class D felony sentences to run consecutively, rather than concurrently, to the merged Class C felony sentences.

[22] With due consideration of the trial court's decision, we find nothing in Joetta's argument that would persuade us to revise that decision. Under the heading "Nature of the Offense," Joetta offers nothing more than the statutory definitions of the crimes to which she pleaded guilty. Appellant's Br. pp. 16-17. She therefore fails to carry her burden on this prong of inappropriateness review. *See* App. R. 46(A)(8)(a) (argument must be "supported by cogent reasoning").

[23] As to her character, Joetta points us to the following: at age fifty-four, she had no prior criminal history; she was found by the presentence investigator to present a low risk of re-offense; she suffered, and presumably continues to suffer, from fibromyalgia (a debilitating, painful disease), osteoarthritis, and knee pain as the result of surgery; and, she alleges, she was dominated and misled by her husband, who prevented her from doing more for M. Appellant's

Br. p. 18. The sentencing court noted the first of these factors in its sentencing order but gave it "little weight." Appellant's App. p. 178.

[24] Joetta offered the trial court, and offers us, a picture of herself controlled by her illness and her husband. She testified that pain kept her from going upstairs to M.'s room for all of 2014 and that she was shocked to see M.'s deterioration on December 1, 2014. Joetta called 911 that day over Steve's violent objection. Steve apparently convinced Joetta after she fell sick in 2012 that she was no longer M.'s legal guardian and that only M.'s legal guardian could take her to the doctor. In the afternoon and evening, when Steve was home from work, Joetta would sleep, relying on Steve to care for M. When Joetta tried to help or care for M., M. would become difficult and violent and would refuse to eat. Moreover, if Joetta "tried to get [M.] to do anything," she testified, "there was either something thrown at me or I was locked out of the house" by Steve. Tr. pp. 165-66. When Joetta told Steve "[m]any times, many times" to take M. to the doctor, she was "told to stay out of it." Tr. p. 170. Between Steve's abusive domineering and her own illness, Joetta felt that she had "nowhere to turn" and could "do nothing to stop what [wa]s happening." Tr. p. 182. "I wish I could have stood up more," Joetta admitted. Tr. p. 170.

[25] The trial court was unimpressed with Joetta's claims, and we will not reweigh the evidence. It is indeed unbelievable that anyone living in the house with M. could have been unaware of her extreme suffering. It is despicable to claim that M., by refusing to eat, being difficult, or in any other way, was somehow responsible for the horrendous living conditions imposed by Steve and Joetta.

[26] Joetta's professed helplessness did not prevent her from taking herself to the doctor at least twice in 2014 or from taking A. for her yearly checkups. It did not prevent Joetta from earning her associate's degree through an online university during the period of M.'s abuse, or from working on a bachelor's degree from the same university at the time M.'s condition was discovered by authorities. It did not prevent her from applying for and collecting a $720 monthly Social Security disability benefit for M.'s care. It also did not prevent her from committing the violent, nauseating acts witnessed by Wise.

[27] The trial court thought that Joetta's "course of conduct as it relates to [M.] [wa]s the more honest assessment of [her] character" than the assessment Joetta offered in her own defense. Tr. pp. 215-16. Joetta has not carried her burden in this appeal to persuade us otherwise.

[28] In light of the nature of Joetta's offenses and her character, we cannot say that a twenty-four-year executed sentence is inappropriate.

## Conclusion

[29] For the above reasons, Joetta waived double jeopardy protection when she pleaded guilty and her sentence was not inappropriate. Her convictions and sentence are therefore in all respects affirmed.

[30] Affirmed.

Baker, J., and Crone, J., concur.