

IN THE

# Court of Appeals of Indiana

Akeem Eichelburger,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Feb 10 2025, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 10, 2025

Court of Appeals Case No.
24A-CR-906

Appeal from the Marion Superior Court

The Honorable Cynthia L. Oetjen, Judge

Trial Court Cause No.
49D30-2201-F1-660

**Opinion by Judge Tavitas**
Judges May and DeBoer concur.

**Tavitas, Judge.**

## Case Summary

[1] Akeem Eichelburger was tried by jury three times for the offenses of attempted murder, a Level 1 felony, and carrying a handgun without a license, a Class A misdemeanor. His first trial ended in a mistrial at the State's request. At the conclusion of his second trial, the jury found him guilty of the handgun charge but could not reach a decision on the attempted murder charge, and the trial court declared a mistrial as to that charge. During his third trial, Eichelburger agreed to plead guilty to the lesser-included offense of battery by means of a deadly weapon, a Level 5 felony, after the jury indicated that it was deadlocked on the attempted murder charge. Eichelburger was then sentenced to the 1,012 days he had served in jail during the proceedings.

[2] On appeal, Eichelburger argues that the trial court abused its discretion by granting the State's request for a mistrial during the first jury trial. He also argues that his retrial violated the protections from double jeopardy found in both the United States and Indiana constitutions and under Indiana statute. The dispositive issue is whether the trial court abused its discretion when it granted the State's request for a mistrial such that Eichelburger's second trial violated his rights against double jeopardy under the Fifth Amendment to the United States Constitution and Indiana Code Section 35-41-4-3(a)(2)(iv). We find that the trial court abused its discretion and thus, upon retrial, subjected Eichelburger to procedural double jeopardy in violation of the Fifth

Amendment and the Indiana statute. Accordingly, we reverse his conviction for carrying a handgun without a license.[1]

## Issue

[3] We address one issue: whether the trial court abused its discretion when it granted the State's request for a mistrial during the first jury trial such that Eichelburger's second trial in which the jury returned a verdict of guilty on the carrying a handgun without a license charge violated his right against double jeopardy under the Fifth Amendment to the United States Constitution and Indiana Code Section 35-41-4-3(a)(2)(iv).

## Facts

[4] In December 2021, Eichelburger and his girlfriend, Ravenn Wilson, were friends with Bethany Lambert—who lived in an apartment on the east side of Indianapolis. The couple had "been staying" with Lambert. Tr. Vol. VI p. 99. Lambert's apartment building was located next to a gas station that operated a convenience store. An alley separated the apartment building from the gas station.

[5] Late in the evening on December 24, 2021, Eichelburger, his girlfriend Wilson, and their friend Lambert traveled to the nearby gas station in Wilson's SUV to

---

[1] In addition to the federal constitution and the Indiana statute double jeopardy arguments, Eichelburger also argues that his retrial violated the principles of double jeopardy found in Article 1, Section 14 of the Indiana Constitution. Because Eichelburger prevails under the federal constitution and Indiana Code Section 35-41-4-3(a)(2)(iv), we need not reach the Indiana Constitution issue.

purchase snacks at the convenience store. Wilson drove the vehicle, Eichelburger was seated in the front passenger seat, and Lambert was seated in the backseat. Wilson parked near a gas pump, and Wilson and Eichelburger exited the vehicle and entered the convenience store, while Lambert remained seated in the backseat. When Eichelburger and Wilson returned with a snack that Lambert did not want, Lambert exited the vehicle and entered the convenience store to purchase a different snack. Eichelburger and Wilson climbed back into the SUV.

[6]     Around 11:00 p.m., Demario Willis drove to the same gas station to purchase a cigar. When Willis arrived, he parked his vehicle between two gas pumps, exited, and walked past Wilson's SUV and toward the entrance to the convenience store. Willis stared into the SUV as he walked by and then entered the store.

[7]     A few minutes later, Eichelburger exited the SUV and entered the store. Once inside, Eichelburger and Willis noticed each other, and Eichelburger asked Willis "if [they] knew each other[.]" *Id.* at 127. Willis did not know Eichelburger. The two men then engaged in conversation and began "jawing" and "saying stuff to each other[.]" Tr. Vol. V p. 179.

[8]     Willis completed his purchase and walked toward the door. He and Eichelburger continued to exchange words. The conversation between the two men "was kind of escalating[.]" *Id.* at 148. Lambert completed her purchase and tried to de-escalate the situation.

[9] Lambert and Eichelburger walked past Willis and exited the store. Willis followed them outside. Once outside, Eichelburger walked toward Wilson's SUV, and Willis walked past him toward his own vehicle. Willis told Eichelburger to "mind [his] own business" and then said, "I'm going to get that thing and rob you." Tr. Vol. VI pp. 131, 145. Eichelburger then pulled a handgun from the pocket of his sweatshirt and aimed the gun at Willis. Willis turned around and ran toward his vehicle. Eichelburger discharged the gun nine times at Willis, and Willis collapsed to the ground in the parking lot. Willis sustained four gunshot wounds. Eichelburger ran from the gas station and into the adjacent alley. Lambert jumped into Wilson's SUV, and Wilson drove away.

[10] Willis used his cell phone to call 9-1-1 and report the shooting. He had been shot in the arm, side, and knee and suffered a fractured femur as a result of being shot in his right leg. Indianapolis Metropolitan Police Department ("IMPD") officers responded to the dispatch, medical personnel arrived at the scene, and Willis was transported to the hospital by ambulance where he underwent emergency surgery for the gunshot wound to his leg.

[11] Two days after the shooting occurred, IMPD officers obtained from the gas station the video camera footage that showed Wilson's license plate number

and the encounter between Eichelburger and Willis from multiple camera angles.[2] The officers used social media to identify Eichelburger as the shooter.

[12] On January 3, 2022, IMPD officers located Wilson's SUV and watched as Wilson and Eichelburger entered the SUV and drove away. The officers stopped the SUV and arrested Eichelburger. After obtaining a search warrant, the officers searched the vehicle and found a 9-millimeter semi-automatic handgun under the front passenger seat. The handgun was later tested and found to have fired the spent casings located in the gas station's parking lot.

[13] After his arrest, Eichelburger was taken to the police station. He waived his *Miranda* rights, agreed to be interviewed by IMPD Detective Gregory Shue, and provided a recorded statement. On January 7, 2022, the State charged Eichelburger with attempted murder, a Level 1 felony, and carrying a handgun without a license, a Class A misdemeanor.

[14] Eichelburger's first jury trial was held on July 31 and August 1, 2023. A few days before the trial began, the State filed a motion in limine requesting, in relevant part, that the defense be prohibited from making

> 4. Any references to the facts contained within the statements made by the defendant to investigators from [IMPD], prior to introduction of such statements by the State of Indiana. Such

---

[2] The gas station captured video from four different camera angles. One camera captured video and audio; the other three cameras captured video only.

statements would be inadmissible hearsay if offered by the defendant pursuant to [Indiana Evidence Rule] 801.[3]

Appellant's App. Vol. II p. 187.

[15] On July 31, 2023, before Eichelburger's trial commenced, the trial court heard arguments on the State's motion in limine. Regarding request number four ("Section 4") of the motion and the statement Eichelburger provided to Detective Shue during the interview, the following discussion occurred:

> [THE STATE]: So when [Detective Shue] testifies, [Defense Counsel] is not allowed to go into [Eichelburger's] statement that the detective . . . took from him.
>
> THE COURT: I think [Defense Counsel] knows that.
>
> [THE STATE]: Okay.
>
> [DEFENSE COUNSEL]: Well, . . . unless there's impeachment. If [the State] misstates my client's statement or anything like that.
>
> [THE STATE]: Well, if the State doesn't mention the statement, you can't go into [it], right?
>
> [DEFENSE COUNSEL]: Sure.

---

[3] Indiana Evidence Rule 801(c) defines hearsay as an out-of-court statement that "is offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible unless it falls under a hearsay exception. *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012) (citing, inter alia, Ind. Evidence Rule 802).

Tr. Vol. III p. 6.

[16] Eichelburger's trial commenced. Willis—the victim—testified, as did IMPD Officer Thomas Faulconer—the officer who apprehended Eichelburger—and Detective Shue, among others. On the first day of trial, during defense counsel's cross-examination of Willis, the following exchange occurred:

> [DEFENSE COUNSEL]: Okay. And Detective Shue actually called you . . . [a]nd he told you what he had learned after talking to [Eichelburger]? Yes?
>
> [WILLIS]: Yes, ma'am.
>
> [DEFENSE COUNSEL]: He told you information he learned from his investigation?
>
> [WILLIS]: Just, like, that he was going to just change the charge or something like that.

*Id.* at 183. The State did not object to this questioning. On direct examination of Officer Faulconer, the State asked the officer if, after apprehending Eichelburger, he had "transport[ed]" him "to be interviewed?" *Id.* at 218. Officer Faulconer testified, "I might have. I don't remember if I did or not." *Id.*

[17] On the second day of trial, during cross-examination of Detective Shue, defense counsel questioned the detective on the integrity of the police investigation and what information, in general, is shared with the public or a witness to a crime. The following exchange took place:

[DEFENSE COUNSEL]: You don't want to influence someone's memory?

[DETECTIVE SHUE]: Correct.

[DEFENSE COUNSEL]: Or their testimony?

[DETECTIVE SHUE]: Correct.

[DEFENSE COUNSEL]: And you actually notified Demario Willis about [Eichelburger's] interrogation?

[DETECTIVE SHUE]: I'm sorry, what[?]

Tr. Vol. IV p. 75.

[18] Believing that defense counsel had violated Section 4 of the motion in limine, the State asked to approach the bench, and the following discussion occurred:

[THE STATE]: That is a violation of the motion in limine. [Defense Counsel has] caused a mistrial, Judge. . . . That is strict -- she said [Eichelburger's] interrogation --

THE COURT: Okay. Calm down.

[DEFENSE COUNSEL]: I can't -- why can't I say –

* * * * *

THE COURT: [Defense Counsel] asked, "Did you say this to him?"

THE STATE: No, she said, "You advised [Willis] of [Eichelburger's] interrogation." That is a reference to the statement. That is not right. That's not proper. We can play back the record. She said, "You advised [Willis] of [Eichelburger's] interrogation."

\* \* \* \* \*

[DEFENSE COUNSEL]: [A]ll I said -- I didn't say any statements [Eichelburger] said, I just said he advised him about the interrogation, and [Willis] testified that that is true.

THE STATE: Any reference, mention about [Eichelburger's] statement prior to the State admitting it is -- was a part of the motion in limine that was granted. That's a mistrial, Judge. . . . She caused a mistrial.

*Id.* at 75-76.

[19]   The trial court removed the jury from the courtroom, and the State requested that the trial court declare a mistrial. In response, defense counsel argued that the State's motion in limine

> was about hearsay, [Indiana Evidence Rule] 801. It was about my client's statements. I just said, "You notified Demario Willis about [Eichelburger's] interrogation?" I haven't elicited any statements, and the conversation we had about the motion in limine was me not eliciting my client's statements. The fact that there was an interview of my client came out yesterday when I was talking to [Willis] on cross[-]examination. I said, "Detective Shue called you?" And he told you that he interviewed -- or maybe said interrogated, I don't recall which word[.] That came out yesterday. There wasn't a yelling mistrial at that point. I'd already asked it. I'm not asking about content. I'm allowed to

talk about his investigation and steps he took, and the fact that he told Demario Willis that Akeem Eichelburger gave a statement goes towards bias and credibility of witnesses. I've not in any way violated [R]ule 801.

*Id.* at 78. The State argued that defense counsel was "trying to force the State's hand" to introduce into evidence Eichelburger's statement to Detective Shue, and added, "because otherwise, if you don't [introduce the statement], what's going to be presented to the jury is, oh, the State's hiding something." *Id.* at 79.

[20] After taking the matter under advisement, the trial court determined that the State's request for a mistrial should be granted. The court explained:

> The State has not brought up any evidence in this case that [Eichelburger] gave a statement. [I]t is entirely improper for Defense [C]ounsel to refer to the fact that [Eichelburger] gave a statement prior to the State introducing it. The harm is to the State of Indiana and . . . in their right to have a fair trial as well and I find it to be a violation of the motion in limine . . . , which is Defense [C]ounsel is not to address the fact that [Eichelburger] . . . has made a statement to police unless and until the State has discussed it.

*Id.* at 80. On August 1, 2023, the second day of Eichelburger's trial, the court declared a mistrial over defense counsel's objection.

[21] On August 16, 2023, Eichelburger filed a motion to dismiss his case, arguing that retrying him would violate his double jeopardy protections under the Fifth Amendment to the United States Constitution, Article 1, Section 14 of the Indiana Constitution, and Indiana statute. The trial court denied the motion to

dismiss and denied Eichelburger's subsequent motion to certify the court's decision for interlocutory appeal.

[22]     Eichelburger was retried. His second jury trial was held from September 25 through 26, 2023. During this trial, the State introduced into evidence the recorded statement that Eichelburger gave to Detective Shue. At the conclusion of the trial, the jury found Eichelburger guilty of Count II: carrying a handgun without a license but could not reach a verdict on Count I: attempted murder. The trial court entered a judgment of conviction on Count II and declared a mistrial as to Count I.

[23]     At his third jury trial, held on January 29 and 30, 2024, Eichelburger was retried on Count I: attempted murder. After the evidence was presented, and while the jury deliberated, the jury indicated that it was deadlocked, and no verdict was returned on the attempted murder charge. Eichelburger agreed to plead guilty to the lesser-included offense of battery by means of a deadly weapon, a Level 5 felony, in exchange for a sentence of time served.

[24]     On March 21, 2024, the trial court sentenced Eichelburger to 1,012 days, time served, for the battery with a deadly weapon conviction and no time for the

carrying a handgun without a license conviction.[4] Eichelburger now appeals his conviction for carrying a handgun without a license.

## Discussion and Decision

[25] We first note that Eichelburger's direct appeal stems from his retrial on—and subsequent conviction of—Count II: carrying a handgun without a license, a Class A misdemeanor, and not from his Level 5 felony conviction following his guilty plea. During his third trial, Eichelburger entered into a plea agreement and pleaded guilty to Level 5 felony battery by means of a deadly weapon, a lesser-included offense of attempted murder. Thus, by entering into a plea agreement and pleading guilty to the Level 5 felony, Eichelburger waived his right to assert a double jeopardy challenge to that conviction through a direct appeal. *See Games v. State*, 743 N.E.2d 1132, 1135 (Ind. 2001) (providing that defendants "who plead guilty to achieve favorable outcomes in the process of bargaining give up a plethora of substantive claims and procedural rights"); *see, e.g.*, *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002) (finding that defendant "waived his right to challenge his convictions on double jeopardy grounds when he entered his plea agreement"). We now turn to the merits of Eichelburger's claim only as it pertains to his conviction for carrying a handgun without a license.

---

[4] The trial court did not impose a sentence for the attempted murder charge, as Eichelburger had pleaded guilty to the lesser-included offense of battery by means of a deadly weapon, a Level 5 felony, in exchange for a sentence of time served.

[26] Eichelburger argues that the trial court abused its discretion by granting the State's request for a mistrial and that his second trial violated his right against double jeopardy under the Fifth Amendment to the United States Constitution, Indiana Code Section 35-41-4-3(a)(2)(iv), and Article 1, Section 14 of the Indiana Constitution. Specifically, Eichelburger contends that there was no manifest necessity for the trial court to declare a mistrial, and, therefore, his retrial subjected him to procedural double jeopardy. We agree and conclude that the trial court abused its discretion by granting a mistrial and thus, subjected Eichelburger to procedural double jeopardy upon retrial.

[27] "Whether to grant or deny a motion for a mistrial lies within the sound discretion of the trial court." *Isom v. State*, 31 N.E.3d 469, 480 (Ind. 2015), *cert. denied*. "We afford great deference to the trial court's decision and review the decision solely for abuse of that discretion." *Id.* Our Supreme Court has held that "'[a] mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation.'" *Id.* at 481 (quoting *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001)).

[28] In *Englehardt v. State*, the majority found that there was no manifest necessity for a mistrial and, thus, Englehardt was subjected to procedural double jeopardy upon retrial. The majority summarized the requirements of manifest necessity in the context of a mistrial in light of decisions by our Supreme Court and the United States Supreme Court as follows:

> [O]ur Supreme Court has explained that an explicit finding of manifest necessity is unnecessary and manifest necessity does not

mean that a mistrial had to be necessary in "'a strict, literal sense.'" *Jackson*[, 925 N.E.2d at 373] (quoting *Washington*, 434 U.S. 497 at 511[]). Nor is the trial court required to state that it considered alternative solutions but found them inadequate. *Id.* Rather, "only a 'high degree' of necessity is required to conclude that a mistrial is appropriate." *Id.* (quoting *Washington*, 434 U.S. at 506[]). Moreover, "the reviewing court must 'accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by [an] improper comment.'" *Id.* (quoting *Washington*, 434 U.S. at 511[]). Accordingly, we "review a grant of mistrial for abuse of discretion." *Jackson*[, 925 N.E.2d at 373]. However, a "mistrial is an extreme remedy that is warranted only when no other curative action can be expected to remedy the situation." *Baumholser v. State*, 186 N.E.3d 684, 692 (Ind. Ct. App. 2022)[, *trans. denied*].

218 N.E.3d 606, 610 (Ind. Ct. App. 2023), *trans. denied*.

[29] Regarding the "variety of factors" that "may bear on the need for a mistrial[,]" the panel in *Englehardt* noted that

> [o]ne significant factor is the extent to which the need for the mistrial is attributable to the State. [*Jackson*, 925 N.E.2d at 373.] If the reason is attributable to the State, it must demonstrate a "much higher" degree of necessity for the mistrial. *Id.* Another factor is the necessity of the mistrial in light of the steps taken by the trial court to avoid the mistrial. *Id.* at 374. This factor encompasses considerations such as whether the trial court provided counsel the opportunity to be heard, considered alternatives, and made its decision after adequate reflection. *Id.* A third factor to consider is the burden imposed by a mistrial. *Id.* The relevant focus is upon "the values underlying the protection against double jeopardy – the burden on the accused, the associated stigmatization as one accused, and the increased risk

of wrongful conviction." *Id.* These values should be weighed against allowing the State "'one complete opportunity for a conviction.'" *Id.* (quoting *Brown*, 703 N.E.2d at 1016). Moreover, the values underlying double jeopardy protection "'are not as great when the trial is terminated shortly after jeopardy has attached as opposed to at a later stage in the trial.'" *Id.* (quoting *Brown*, 703 N.E.2d at 1016).

218 N.E.3d at 610-11.

[30] Here, it is undisputed that, at Eichelburger's first trial, a jury was empaneled, jeopardy had attached, the trial court attributed the mistrial to the defense, Eichelburger did not request or consent to the declaration of a mistrial, and the trial court did not make an explicit finding that the mistrial was manifestly necessary. Therefore, our first task is to determine whether defense counsel violated Section 4 of the motion in limine when counsel asked the detective if he had "actually notified Demario Willis about [Eichelburger's] interrogation[,]" Tr. Vol. IV p. 75, and, if so, whether this violation created a manifest necessity for a mistrial. We then determine whether, upon retrial, Eichelburger was subjected to procedural double jeopardy.

## I. Eichelburger did not violate the motion in limine and, therefore, there was no manifest necessity to grant a mistrial.

[31] Eichelburger contends that the trial court abused its discretion by declaring a mistrial. He maintains that manifest necessity did not exist to declare a mistrial because, according to Eichelburger, the question defense counsel posed to the detective did not violate Section 4 of the motion "or the rules of evidence" pertaining to hearsay. Appellant's Br. p. 17. Eichelburger argues that the

"plain language of [Section] 4, and the pre-trial discussion thereof, made clear that Eichelburger was precluded from referencing the content of statements Eichelburger made to [the detective] during his interrogation." *Id.* at 22. He further argues that "[n]either the plain language of [Section] 4 nor the pre-trial discussion of the [matter] indicated Eichelburger could not bring up the existence of the statement." *Id.* at 23. We agree.

[32] On the second day of Eichelburger's first jury trial, defense counsel asked Detective Shue if he had "notified Demario Willis about [Eichelburger's] interrogation?" Tr. Vol. IV p. 75. The State requested a mistrial on grounds that defense counsel's question referenced Eichelburger's police interview, which the State argued was a blatant violation of Section 4 of the motion in limine. The State further argued that defense counsel's question, effectively, placed the State in the position of having to introduce Eichelburger's statement into evidence or risk leaving the jury with the impression that the State was "hiding something." *Id.* at 79.

[33] The trial court agreed with the State that it was "entirely improper for Defense [C]ounsel to refer to the fact that [Eichelburger] gave a statement [to the detective] prior to the State introducing it." *Id.* at 80. The trial court determined that Section 4 of the motion prohibited counsel from "address[ing] the fact that [Eichelburger] . . . ha[d] made a statement to police unless and until the State has discussed it[,]" and the trial court ultimately declared a mistrial. *Id.*

[34] Section 4 of the motion in limine, however, prohibited defense counsel from referencing only "the **facts** contained within the **statements made by [Eichelburger] to investigators from [IMPD]**," prior to the State introducing the statements. Appellant's App. Vol. II p. 187 (emphasis added). Section 4 provided that "[s]uch statements would be inadmissible hearsay if offered by [Eichelburger] pursuant to [Indiana Evidence Rule] 801." *Id.* Thus, defense counsel's question that referenced Eichelburger's "interrogation" did not violate the motion in limine. Tr. Vol. IV p. 75. And the question did not introduce into evidence any of Eichelburger's statements to the detective that would have amounted to hearsay under Evidence Rule 801. Simply put, Section 4 of the motion in limine did not expressly prohibit defense counsel from referencing that the detective had interviewed Eichelburger. The section only prohibited introducing into evidence the **actual statements** that Eichelburger made to the detective, which defense counsel did not do.

[35] Furthermore, on the first day of Eichelburger's trial, defense counsel referenced the interview when counsel asked Willis, the victim, if Detective Shue had contacted him and "told [him] what [the detective] had learned **after talking to [Eichelburger]**?" Willis responded in the affirmative. Tr. Vol. III p. 183. The State did not object to the question. Thus, the jury was already aware that Eichelburger had made a statement to Detective Shue. Later, on direct examination of Officer Faulconer, the State referenced Eichelburger's interview when it asked if after apprehending Wilson and Eichelburger, the officer had

"transport[ed]" either of the two "to be interviewed?" *Id.* at 218. Officer

Faulconer testified, "I might have. I don't remember if I did or not." *Id.*[5]

[36] In sum, defense counsel did not violate the motion in limine. Section 4 prohibited the defense from referencing Eichelburger's statements from the interview, not that the interview occurred.[6] And evidence that Eichelburger had spoken to the police had already been admitted. Thus, the extreme remedy of a mistrial was not warranted. Accordingly, manifest necessity did not exist to warrant a mistrial, and the trial court abused its discretion by granting the State's request for a mistrial.

## II. Eichelburger's retrial subjected him to procedural double jeopardy.

[37] Because the mistrial was improper, Eichelburger argues that his second trial violated his right against double jeopardy under the Fifth Amendment to the United States Constitution, Indiana Code Section 35-41-4-3(a)(2)(iv), and

---

[5] Eichelburger also argues that the State was not prejudiced by defense counsel's reference to Eichelburger's interview because "[defense counsel's] question went to credibility and bias, not whether the State was hiding the interview." Appellant's Br. p. 17. He further argues that, even if the question violated the motion in limine, the trial court could have resolved any error by admonishing the jury. Because we conclude that defense counsel's question did not violate Section 4 of the motion in limine, we need not address these arguments.

[6] *See Englehardt v. State*, 218 N.E.3d 606, 613 (Ind. Ct. App. 2023) ("By definition, admissible evidence cannot create a manifest necessity for a mistrial. To conclude otherwise would gut the constitutional protection against double jeopardy, which embraces the defendant's valued right to have his trial completed by a particular tribunal.") (Crone, J., concurring) (internal quotations and citations omitted).

Article 1, Section 14 of the Indiana Constitution.[7] We resolve this matter under Eichelburger's Fifth Amendment and Indiana statute claims.

## A. The Fifth Amendment to the United States Constitution

[38] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V; *Benton v. Maryland*, 395 U.S. 784, 794 (1969). In other words, the Fifth Amendment prohibits the State from placing a defendant in jeopardy twice for the same offense. *Brown v. State*, 703 N.E.2d 1010, 1015 (Ind. 1998) (citing *Benton*, 395 U.S. at 794). "Jeopardy attaches when a jury has been selected and sworn." *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010). "Once jeopardy has attached, the trial court may not grant a mistrial over a defendant's objection unless 'manifest necessity' for the mistrial is found." *Brown*, 703 N.E.2d at 1015 (quoting *Arizona v. Washington*, 434 U.S. 497, 505 (1978)).

[39] We have determined that the trial court declared a mistrial without manifest necessity—after jeopardy had attached, and over Eichelburger's objection. Therefore, the mistrial served as an acquittal, and Eichelburger could not be

---

[7] We agree that Eichelburger prevails on all three claims in light of cases that have already been decided by our Supreme Court and the United States Supreme Court. Regarding Eichelburger's double jeopardy claim under the Indiana Constitution, we find no cases that address such a claim in the context of the particular circumstances presented here. However, it is not necessary to resolve the Indiana Constitution claim, as we decide the double jeopardy matter under the Fifth Amendment to the United States Constitution and Indiana Code Section 35-41-4-3(a)(2)(iv).

retried for the same offenses. *See Brock v. State*, 955 N.E.2d 195, 206 (Ind. 2011) ("A mistrial granted over the defendant's objection and in the absence of manifest necessity acts as an acquittal and bars reprosecution for the same offense."), *cert. denied*. Accordingly, we conclude that the trial court subjected Eichelburger to procedural double jeopardy in violation of his Fifth Amendment rights when it retried his case.

## B. Indiana Code Section 35-41-4-3(a)(2)(iv)

[40] Additionally, we find that Indiana Code Section 35-41-4-3(a)(2)(iv)—which codifies constitutional double jeopardy principles—was violated. *See Willoughby v. State*, 660 N.E.2d 570, 575 (Ind. 1996) (noting that the "constitutional directives against double jeopardy" found in the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution "are codified in Indiana Code [Section] 35-41-4-3").

[41] Indiana Code Section 35-41-4-3(a)(2)(iv) provides, in relevant part:

> (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if: . . .
>
> > (2) the former prosecution was terminated after the jury was impaneled and sworn . . . , unless . . . (iv) prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state[.]

Under the statute, Eichelburger could only be retried if exception (iv) was implicated. However, exception (iv) was not implicated, as Eichelburger's counsel did not violate the motion in limine. Thus, no prejudicial conduct occurred such that it was impossible to proceed with Eichelburger's first trial without injustice to Eichelburger or the State. *See* Ind. Code § 35-41-4-3(a)(2)(iv). Accordingly, Eichelburger could not be retried, and the trial court—by doing so—violated the Indiana statute, pursuant to Indiana Code Section 35-41-4-3(a)(2)(iv).

## Conclusion

The trial court abused its discretion in granting the State's request for a mistrial when no manifest necessity warranted a mistrial. Eichelburger's second trial violated his rights under the Fifth Amendment to the United States Constitution and Indiana Code Section 35-41-4-3(a)(2)(iv) to be free from procedural double jeopardy. Accordingly, we reverse Eichelburger's conviction for carrying a handgun without a license, a Class A misdemeanor.

Reversed.

May, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Joshua Vincent
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana